[relates to Docket Items 33 and 34]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KWASI SEKOU MUHAMMAD, a/k/a MICHAEL WINSTEAD, | |
| Plaintiff, | Civil No. 05-5001 (JBS) |
| v. | **OPINION** |
| N.J. DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

**APPEARANCES:**

Kwasi Sekou Muhammad
#422750/139888C
East Jersey State Prison
Lockbag-R
Rahway, NJ 07065
     Plaintiff pro se

Susan Marie Scott, Esq.
OFFICE OF THE NJ ATTORNEY GENERAL
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
     Attorney for Defendants J. DeMaio and M. Williams

**Simandle, District Judge:**

    This matter is before the Court on the motion to dismiss
and/or for summary judgment [Docket Item 34] by State Defendants
James DeMaio and Michael Williams ("Defendants").  The Court will
construe the motion as a motion to dismiss pursuant to Fed. R.
Civ. P. 12(b)(6), and not as a motion for summary judgment,
because discovery was still pending and the case was in a very

early stage of litigation at the time of the motion.[1]  See Miller
v. Beneficial Management Corp., 977 F.2d 834, 845 (3d Cir. 1992)
(holding summary judgment on the merits was precluded by the
incomplete state of discovery); Sames v. Gable, 732 F.2d 49, 51
(3d Cir. 1984) (holding it error for the district court to grant
summary judgment without a hearing while discovery requests
regarding central issues of fact were still pending); Costlow v.
United States, 552 F.2d 560, 564 (3d Cir. 1977) (holding that a
continuance of a motion for summary judgment for purposes of
discovery should be granted almost as a matter of course).
Indeed, there have been several discovery disputes in this case
that arose after Defendants filed the motion to dismiss.  Thus, a
motion for summary judgment would have been premature when this
motion was filed.  For the reasons explained, the Court shall
grant the motion to dismiss in part and deny it in part.

**I.   STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied "unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of her claim which would entitle her to relief."

---

[1]  Also pending before the Court is Defendants' motion to
file under seal [Docket Item 33] exhibits to the affidavit of
Steven Johnson, which contain Plaintiff's medical records.  The
Court shall grant that motion.  Defendants must submit a copy of
the documents that have been provided to Chambers to the Clerk
for filing under seal.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts and must view all allegations in the Complaint in the light most favorable to the plaintiff.  See id. at 236; Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1394-95 (3d Cir. 1991); Glenside West Corp. V. Exxon Co., U.S.A., 761 F.Supp. 1110, 1117 (D.N.J. 1991); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In the Complaint, it is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  When a motion to dismiss is before the court, the question for the court is not whether plaintiff will ultimately prevail; rather, it is whether she can prove any set of facts in support of her claims that would entitle her to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the Complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the non-movant, plaintiff's allegations state a legal claim.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

## II.  FACTS

Plaintiff alleges that Defendants inflicted cruel and

unusual punishment on him and discriminated against him based on his disability when he was an inmate at South Woods State Prison. Plaintiff has an amputated leg and wears a prosthesis.  Plaintiff alleges generally that defendants, with awareness of his disability, purposely housed him on the second floor of the prison instead of the first, and on the top bunk instead of the bottom.  He also alleges that prison officials ignored his requests for a more accessible cell and medical visits to obtain documentation showing his need for such an accommodation. The housing situation allegedly caused Plaintiff pain and deprived him of access to essential facilities, such as showers. Plaintiff asserts claims under the Eighth Amendment, the Americans with Disabilities Act ("ADA") and New Jersey tort law.

**III. ANALYSIS**

    **A.   Motion to Dismiss ADA Claims against Individual Defendants**

    Defendants argue that the claims Plaintiff alleges under the Americans with Disabilities Act are not viable as to the individual employees of the prison, DeMaio and Williams. Plaintiff does not oppose this aspect of the motion.  While Muhammad alleges certain facts that may tend to support a cognizable claim under the ADA, the Court agrees that his ADA claims against these individual defendants are not viable.

    Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity" or "discrimination

by any such entity." 42 U.S.C. § 12132. "Public entity" is

defined in the statute as:

> (A) any State or local government;
>
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
>
> (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45).

42 U.S.C. § 12131. "Public entities" encompassed by Title II of

the ADA include correctional facilities. <u>Pennsylvania Dep't of

Corr. v. Yeskey</u>, 524 U.S. 206 (1998).  However, this section

clearly does not include individuals. <u>See</u> <u>Alsbrook v. City of

Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc), <u>cert.

dismissed</u>, <u>Alsbrook v. Arkansas</u>, 529 U.S. 1001 (2000).  Thus, the

individual defendants cannot be held liable for violations of

Title II of the ADA.  See <u>Calloway v. Boro of Glassboro Dep't of

Police</u>, 89 F. Supp. 2d 543, 557 (D.N.J. 2000)  and <u>Yeskey v.

Pennsylvania Dep't of Corr.</u>, 76 F. Supp. 2d 572, 574-75 (M.D. Pa.

1999).  Therefore, the ADA claim will be dismissed as against the

individual defendants accordingly.  The ADA claim will be allowed

to proceed as against the state public entity defendants, NJDOC

and CMS.

### B.   Plaintiff's Eighth Amendment Claims

Plaintiff alleges that the conditions of his housing and

Defendants' failure to respond to his medical needs constituted

cruel and unusual punishment in violation of the Eighth Amendment.  Defendants argue that there is no evidence to support these claims, an argument better made at the close of discovery, on a summary judgment motion.  Therefore, the Court will deny the motion to preclude Plaintiff's Eighth Amendment claims, as there is no argument that Plaintiff can prove no set of facts that would support a basis for relief under the Eighth Amendment.

Under the Eighth Amendment, prison conditions "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

> Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . . [that] deprive inmates of the minimal civilized measure of life's necessities."  Accordingly, when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety.

> To demonstrate a deprivation of his basic human needs, a plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Wilson v. Seiter, 501 U.S. 294, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)).

<u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410, 417-18 (3d Cir. 2000) (citations omitted).  While Plaintiff has alleged that Defendants' conduct made it more difficult for him to access showers, he has not alleged the serious deprivations of basic human needs that he would need to prove to succeed on a pure conditions of confinement claim.

However, the Eighth Amendment proscription against cruel and unusual punishment of course also requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999).  To set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  <u>Estelle</u>, 429 U.S. at 106; <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring

treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006. Defendants apparently concede that Plaintiff's amputation prosthesis constitute "a life-long handicap or permanent loss," that is, a serious medical need.

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000).

The Third Circuit has found deliberate indifference where a

prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Corr. Inst.'l Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen … prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).  Plaintiff has adequately alleged that Defendants knew of his need for medical care and a new housing accommodation and that they intentionally denied him access to medical facilities and new housing arrangements, with deliberate indifference to his serious medical need.

### C.   Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff asserts a claim under New Jersey law for intentional infliction of emotional distress.  Defendants argue that this tort claim must be dismissed for failure to file a notice of tort claim, as the New Jersey Tort Claims Act requires

for claims against public entities.  <u>See</u> N.J. Stat. Ann. §
59:8-8.

> Prior to filing a complaint, a plaintiff must
> submit a notice of claim to the public entity
> within ninety days of the claim's accrual,
> N.J.S.A. 59:8-8a, and must file suit within
> two years after the claim's accrual, N.J.S.A.
> 59:8-8b. The notice must include the name of
> the public entity, and the name of the
> employee or employees causing the injury, if
> known. N.J.S.A. 59:8-4e. "[T]he notice
> [requirements are] triggered by the
> occurrence of injury and [notice] must be
> filed in order for a complaint to be lodged
> against the public entity." <u>Beauchamp v.
> Amedio</u>, 164 N.J. 111, 121, 751 A.2d 1047
> (2000).

<u>Velez v. City of Jersey City</u>, 180 N.J. 284, 290 (2004).  The New

Jersey Supreme Court has explained that the notice requirement

applies to claims against public employees, as well, and does not

exclude intentional torts.  <u>Id.</u> at 294-95.

Plaintiff did not assert in his Complaint that he had filed

a notice of tort claim, nor does he oppose this argument in his

opposition to the motion to dismiss.  As the New Jersey Supreme

Court has found, the Tort Claims Act requires litigants to file

notices of tort claims for intentional torts.  <u>Velez</u>, 180 N.J. at

296.  Plaintiff's failure to allege that he has done so, or to

oppose this aspect of the motion to dismiss, is fatal to his tort

claims against Defendants, even at this early stage.  The Court

shall, therefore, grant the motion to dismiss Plaintiff's claim

for intentional infliction of emotional distress.

10

### D.   Punitive Damages

Defendants also move to preclude Plaintiff's claim for punitive damages because, they claim, there is no evidence that they acted with the evil motives for which such damages are reserved under federal law.  However, Plaintiff alleges just the opposite:  that Defendants purposely housed him in the top bunk and the second floor, and refused his requests for medical care or a change in accommodations, knowing of the discomfort this would cause him because of his prosthetic leg and knowing of his need for a lower bed.  Thus, the Court cannot grant the motion to dismiss Plaintiff's claims for punitive damages.

## IV.   CONCLUSION

For the foregoing reasons, the Court shall grant the motion to dismiss Plaintiff's ADA claims against Defendants James DeMaio and Michael Williams, and shall also dismiss Plaintiff's claim for deliberate infliction of emotional distress arising under New Jersey law, but shall deny the motion in all other regards, without prejudice to renewal as a motion for summary judgment, if appropriate, upon conclusion of discovery.  The parties shall complete factual discovery within the next ninety (90) days.  An accompanying Order shall be entered.


**August 9, 2007**                          **  s/ Jerome B. Simandle  **
Date                                         Jerome B. Simandle
                                             U.S. District Judge

11