IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY

```
┌─────────────────────────────────────┐
│                                     :
│ KWASI SEKOU MUHAMMAD, a/k/a         :
│ MICHAEL WINSTEAD,                   :
│                                     :     Civil No. 05-4999 and
│              Plaintiff,             :     Civil No. 05-5001(JBS/AMD)
│                                     :
│      v.                             :
│                                     :           OPINION
│ DEPARTMENT OF CORRECTIONS, et       :
│ al.,                                :
│                                     :
│              Defendants.            :
│                                     :
└─────────────────────────────────────┘
```

APPEARANCES:

Kwasi Sekou Muhammad, Pro Se
#422750/13988C
Northern State Prison
P.O. Box 2300
Newark, NJ 07114

Susan Marie Scott, Deputy Attorney General
OFFICE OF THE NJ ATTORNEY GENERAL
RJ Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
     Attorney for Defendants New Jersey Department of
     Corrections, Officer DeMaio, and Officer Williams

David J. Bishop, Esq.
CRANMER, BISHOP, MARCZYK & O'BRIEN, PC
508 New Jersey Avenue
Suite B3
Absecon, NJ 08201
     Attorney for Defendants Correctional Medical Services, Inc.;
     Dr. Chenna G. Reddy; and Loretta Terry

Jerry L. Tanenbaum, Esq.
SCHNADER, HARRISON, SEGAL & LEWIS, LLP
220 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
     Former Attorney (Pro Bono) for Plaintiff

**SIMANDLE,** District Judge:

## I. INTRODUCTION

This matter is before the Court on Defendant's motion to enforce a settlement agreement [Docket Item 140], and Plaintiff's renewed motion for appointment of counsel [Docket Item 147]. As explained below, the Court will convene an evidentiary hearing before deciding the motion to enforce the settlement, and will deny Plaintiff's request for counsel to represent him at this hearing.

## II. BACKGROUND

Plaintiff Kwasi Sekou Muhammad is an inmate who is presently confined at Northern State Prison in Newark, New Jersey, and who was previously confined at several other facilities. Plaintiff's left leg was amputated below the knee prior to his incarceration, and he consequently uses a prosthesis to ambulate. Plaintiff, initially proceeding pro se, filed two lawsuits related to his condition on September 26, 2005, Civil Action No. 05-4999 and Civil Action No. 05-5001.

Plaintiff's first Complaint (Civil Action No. 05-4999) was against the Department of Corrections ("DOC"), Correctional Medical Services, Inc. (the "CMS Defendants"), and Dr. Reddy, a physician who treated him. The suit alleged that in failing to provide him with physical therapy, the Defendants had been

2

deliberately indifferent to his medical needs in violation of the Eighth Amendment; that this inadequate medical treatment violated Title II of the ADA; and that Dr. Reddy had committed medical malpractice in violation of New Jersey law.  On sua sponte review, the Court dismissed Plaintiff's Eighth Amendment claim against the DOC and Plaintiff's ADA claim against Dr. Reddy, but permitted the rest to proceed, although it noted that these claims were possibly time-barred.[1]

Plaintiff's second Complaint (Civil Action No. 05-5001) was filed against the DOC, CMS, two correctional officers, Williams and DeMaio, and his treating nurse, Nurse Terry.  Plaintiff alleged that his transfer from the handicapped-accessible cell on the first floor to the upper bunk of a second-floor cell violated his rights under the Eighth Amendment and the ADA.

Plaintiff was appointed pro bono counsel on June 12, 2007 [Docket Item 61], and these two actions were subsequently consolidated by order of Magistrate Judge Donio on November 20, 2007 [Docket Item 81].

The DOC Defendants and CMS Defendants filed separate motions

---

[1] Plaintiff also named as Defendants in the first lawsuit Corrections Officers Kidwell and Sexton, as well as a private company called Harry J. Lawell & Son, Inc., which had manufactured his prosthetic leg.  (Compl. at 1.)  In its August 14, 2005 Opinion and Order [Docket Items 8 and 9], the Court determined that Plaintiff's claims against these Defendants were barred by the applicable statutes of limitations and dismissed these Defendants from the litigation.

3

for summary judgment as to all of Plaintiff's claims on the consolidated docket [Docket Items 96 and 97].  On November 12, 2008, the Court granted the motion for summary judgment of Defendants Reddy, Terry, and CMS as to all of Plaintiff's claims.  The Court also granted the DOC's motion for summary judgment as to Plaintiff's ADA claim arising out of the provision of inadequate medical treatment (Civil Action No. 05-4999), but denied the DOC's motion for summary judgment as to Plaintiff's ADA claim arising out of the conditions of his confinement and denied Defendants Williams' and DeMaio's motion for summary judgment as to Plaintiff's Eighth Amendment claims (Civil Action No. 05-5001).  Thus, Plaintiff's ADA claim arising out of the conditions of his confinement against the DOC and Eighth Amendment claims against Defendants Williams and DeMaio contained in Civil Action No. 05-5001 were to be decided at trial.

After the summary judgment order, Plaintiff and his counsel discussed settlement.  On December 23, 2008, Plaintiff's attorney wrote to Plaintiff to memorialize the settlement authority he had been granted.  (Muhammad Decl., Ex-A.)  Under a subject line indicating that it was in reference to the consolidated cases, the letter states:  "[Y]ou have authorized us to make a settlement proposal to the defendants in the amount of $14,000 with authority to negotiate towards a settlement in the vicinity of $10,000.  We will present that proposal as soon as the year

4

begins." (Id.)  The letter does not indicate whether the authority was limited to any particular claims or any particular defendants, except insofar as the subject heading lists both cases.

Plaintiff contends that his authorization was only to settle the claims that survived summary judgment (Civil Action No. 05-5001), not his right to appeal the claims upon which the state defendants were granted summary judgment (Civil Action No. 05-4999).  (Muhammad Decl., ¶2.)

On February 11, 2009, Plaintiff's counsel and Defendants' counsel agreed to a settlement of $15,000 with any outstanding judgments and/or liens against Plaintiff to be subtracted from the settlement amount.  (Scott Decl., ¶ 4.)  On February 13, 2009, Plaintiff's counsel notified the Court that the parties had reached a settlement agreement and were "in the process of finalizing the settlement language and obtaining the parties' signatures." (Scott Decl., Ex-G.)  Accordingly, on February 19, 2009, the Court entered an Order of Dismissal in this matter. [Docket Item 128.]

Plaintiff was forwarded a copy of the negotiated release on February 13, 2009.  The release indicated a deduction of $2,425 from the settlement figure based on various liens Defendant owed to the state based on some traffic infractions.  (Muhammad Decl., Ex-B.)  The release was for all claims made against DOC

5

defendants in both Civil Action No. 05-5001 and Civil Action No. 05-4999, not just those claims contained in Civil Action No. 05-5001.  (Id.)

Plaintiff claims that the contents of the release were not explained to him until a telephone conversation of February 24, a conversation mentioned in a letter sent on February 26. (Muhammad Decl., ¶6 & Ex-E.)  From the letter, it appears that Plaintiff raised some objections to the release, including the deduction of money he believed he did not owe, as well as concern about exactly what claims and rights were being released.

After considerable back and forth among all parties, on March 27, 2009, Plaintiff's counsel wrote to Plaintiff that based on the evidence Plaintiff was able to muster, it did not appear that they would be able to argue that Plaintiff did not owe the amounts claimed in the liens.  (Muhammad Decl., Ex-G.)  Plaintiff claims that he spoke with his attorney on April 8, 2009 and was willing to enter the settlement with regard to the claims contained in Civil Action No. 05-5001, but not with respect to his rights to appeal summary judgment on the claims in Civil Action No. 05-4999.  On April 8, 2009, Plaintiff's counsel advised that although the parties had reached a settlement agreement, Plaintiff refused to sign the release accompanying the stipulation of dismissal.  On April 9, Plaintiff's counsel advised Plaintiff that he may have to withdraw because a conflict

6

of interest had developed with regard to the settlement because Plaintiff's counsel believed the settlement with regard to all the claims, including the right to appeal, was enforceable. (Muhammah Decl., Ex-H.)

On April 19, 2009, Plaintiff wrote a letter to the Court stating that the scope of his settlement authority was only for settlement of the remaining claims against the state defendants, and not his right to appeal those claims against the state defendants that had been previously dismissed by the Court as time-barred.  (Muhammad Decl., ¶ 11, Ex-I.)

On August 24, 2009, Defendants filed a motion to enforce the settlement agreement [Docket Item 140].  On September 3, 2009, Plaintiff's counsel filed a cross-motion to withdraw due to a conflict of interest, which was granted on November 6, 2009. [Docket Item 143.][2]

Defendant seeks enforcement of the agreement as outlined in the February 13 release, including the release of rights to appeal the decision with respect to Civil Action No. 05-4999.

---

[2] Plaintiff attaches to his brief opposing enforcement of the settlement a letter of May 4, 2009, sent to him by his counsel.  The letter states that "the sole argument we could make on your behalf was that you believed that saying yes to all of the terms of the agreement as you did would not bind you so long as we had not yet reduced it to writing." (Muhammad Decl., Ex-J.)  It is not clear to the Court at what point Plaintiff is alleged to have assented to the terms of the release.  The release was not drafted until February 11, and not sent to Plaintiff until the day on which the Court was notified that a settlement had been reached.

Plaintiff's brief opposing the motion for enforcement asks for the enforcement of the settlement for those parts that he claims to have granted authority to his counsel to settle (i.e. as to the claims in Civil Action No. 05-5001), but asks that it not be enforced with respect to his right to appeal the claims contained in Civil Action No. 05-4999.

**III.   DISCUSSION**

    **A.   Enforcement of Settlement Agreements**

Construction and enforcement of settlement agreements is governed by state law.  Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 348-49 (D.N.J. 1996).[3]  Under New Jersey state law, a "settlement between parties to a lawsuit is a contract like any other contract."  Peskin v. Peskin, 638 A.2d 849, 856 (N.J. Super. Ct. App. Div. 1994).  Settlements must be "voluntarily made and freely entered into."  Id. at 856-57 (citing Pascarella v. Bruck, 462 A.2d 186 (N.J. Super. Ct. App. Div. 1983)).

It is not necessary that a settlement be in writing, nor will an oral agreement necessarily be unenforceable because the parties contemplate a future writing to flesh out details.

---

[3] Plaintiff urges the Court to rely on federal law regarding the waiver of constitutional rights to assess the settlement agreement, but cites cases indicating that state law governs.  See Cooper v. Borough of Wenonah, 977 F.Supp. 305, 312 (D.N.J. 1997).

8

Excelsior, 975 F. Supp. at 349; see also Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970). A settlement can be enforced "notwithstanding the fact that a writing does not materialize because a party later reneges." Lahue v. Pio Costa, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993).

Under well-settled New Jersey law, "stipulations . . . made by attorneys when acting within the scope of their authority are enforceable against their clients." Jennings v. Reed, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005) (emphasis in original). Additionally, "[a]n attorney is presumed to possess authority to act on behalf of the client." Id. That said, mere negotiations are not binding on the client unless the client has expressly authorized the settlement or the attorney acts with apparent authority to reach a settlement because "the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement." Amatuzzo v. Kozmiuk, 703 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1997); Cisrow v. Southwoods State Prison, 176 Fed. App'x 317, 318 (3d Cir. 2006). Thus, if an attorney is either acting with actual authority, or apparent authority, the agreements entered into by the attorney are binding on the client.

Apparent authority exists "where the client by words or conduct communicated to the adverse attorney, engenders a

reasonable belief that the attorney possesses authority to conclude a settlement . . . However, the attorney's words or acts alone are insufficient to cloak the attorney with apparent authority." Id.

### B. Application of New Jersey Law of Settlement

The critical question in this case is whether Plaintiff's counsel acted with either actual or apparent authority in negotiating and agreeing to a settlement involving the waiver of Plaintiff's rights to appeal the claims contained in Civil Action No. 05-4999. If so, the settlement must be enforced. If not, it should not be enforced.

There is a dispute of fact over whether Plaintiff provided his attorney actual authority in this respect. Plaintiff maintains he authorized his attorney to settle only those active claims contained in Civil Action No. 05-5001. Plaintiff's brief and supporting sworn declaration state that not only did he not grant authority to his attorney to give up his right to appeal the judgment in Civil Action No. 05-4999, but that he specifically gave authority to resolve only the claims remaining in Civil Action No. 05-5001. This declaration regarding the conversation Plaintiff had with his counsel is sufficient to raise a material and substantial issue as to whether the authority was actually granted. Amatuzzo, 703 A.2d at 12

10

(finding sworn declaration that authority was not given to be enough to require fact-finding). Cf. U.S. v. Lightman, 988 F. Supp. 448, 464 (D.N.J. 1997) (distinguishing Amatuzzo on the basis that no sworn declaration was offered with regard to the authority granted).

As to Plaintiff's counsel's apparent authority to agree to the settlement with respect to Civil Action No.t 05-4999, there is nothing in the record submitted to the Court so far indicating that Plaintiff "by words or conduct communicated to the adverse attorney" anything, including anything about his attorney's authority to settle. Unfortunately, a defendant's knowledge of a plaintiff's counsel's authority in the context of litigation on behalf of a prisoner is frequently based on the prisoner's attorney's representations of his authority rather than the client's.

Therefore, the Court must convene a hearing to resolve the factual question of what actual authority was given in order to determine whether the settlement should be enforced.

### C. Reappointment of Pro Bono Counsel

Plaintiff asks for reappointment of counsel for the purposes of the motion to enforce settlement and for the civil trial he believes is necessary. Because the motion to enforce settlement may eliminate the possibility of civil trial, and because it

appears that Plaintiff is still willing to settle the claims that would proceed to trial even if the previously negotiated settlement is not enforceable, the Court will determine at this time only whether appointment of counsel for the settlement enforcement motion is warranted.

Under 28 U.S.C. § 1915(e) "district courts [have] broad discretion to request an attorney to represent an indigent civil litigant."  Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).  If the Court determines that the litigant's claims have some arguable merit, as is the case here, this Court typically considers (1) the plaintiff's ability to present his or her case; (2) the complexity of the legal issues involved; (3) the degree to which factual investigation will be necessary and the plaintiff's ability to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require expert testimony; and (6) whether the plaintiff can attain and afford legal counsel.  Id. at 156-57; Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997).  The Court previously determined that Plaintiff cannot afford legal counsel in this matter, so the Court will further consider the first five Tabron factors with respect to the motion for enforcement of settlement.

As to the first three factors, Plaintiff's ability to present his case, the complexity of the legal issues involved,

12

and the degree of factual investigation necessary, the legal framework for the motion to enforce settlement is simple and unambiguous.  The only question for the Court is one of fact, and Plaintiff is fully capable of testifying about what authority he gave.  Moreover, the motion will not require expert testimony.  Nearly all of the Tabron factors therefore suggest counsel should not be appointed.

The sole factor cutting in the other direction (other than Plaintiff's inability to afford counsel), is that the motion to enforce settlement may rest entirely on a credibility determination.  Even if the Court were convinced that appointed counsel would be more able to defend Plaintiff's credibility than Plaintiff himself, the Court would still not be inclined to appoint counsel for the resolution of this simple motion about which Plaintiff has shown himself to be more than capable of presenting his position.

**IV.   CONCLUSION**

Because there is a material dispute over the authority granted to Plaintiff's counsel by Plaintiff, the Court must hold an evidentiary hearing to evaluate what authority was given in order to evaluate whether the settlement should be enforced.  The Court also requests Plaintiff's previous counsel to be present and prepared to testify.  The Court declines to appoint Plaintiff

counsel for this hearing because of the simplicity of the matters involved and Plaintiff's skill and competency.  If the Court ultimately determines that the settlement is not enforceable, the Court will reconsider at that time whether to appoint counsel.

**March 2, 2010**　　　　　　　　　　　　　　**s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　　　　　United States District Judge